# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| SCOTT B. TRAMMELL, | } |
| | } |
| Plaintiff, | } |
| | } |
| v. | }   Case No.: 2:15-cv-01473-RDP |
| | } |
| AMDOCS, INC., | } |
| | } |
| Defendant. | } |

## MEMORANDUM OPINION

As anyone who has tried it knows, coaching Little League baseball can be an adventure. But the challenging aspects of that undertaking are not limited to teaching kids the fundamentals of the game. There is also the matter of dealing with other coaches, particularly those who have children playing in the league. For example, Little League coaches take different approaches to draft day and all-star selection. When it is time to draft players at the beginning of a season, the strategy of most coaches is to take their child as late in the draft as possible. (After all, selecting a child in a later round allows the coach to draft other quality players with early picks, and thus draft a better team). Of course, a coach is not permitted to unilaterally decide which round his child is selected. So, the strategy is to convince the other coaches that one's child is not sufficiently skilled to be taken in an early round. However, by the end of the season, when it's time to select an all-star team, the agendas shift. Coaches want their children to be chosen for all-stars. For that to happen, they must lobby other coaches for their votes. Thus, contrary to the views at the start of the year, by the time all-star selection rolls around, each coach's child has become an adolescent version of Henry Aaron. The lesson to all of this: timing is everything.

There are some parallels between this case and the Little League baseball phenomenon described above. Plaintiff Scott Trammell worked for five years as a Project Management Office Professional. During at least part of that time, he maintained a LinkedIn profile. Defendant claims that Plaintiff's description of his own job duties is different now - while the parties are battling over whether he fits within a wage our exemption - than the description was when he proudly posted his profile on LinkedIn. Timing is everything.

This case is before the court on defendant Amdocs, Inc.'s Motion for Summary Judgment (Doc. # 8), filed October 19, 2015. The Motion is fully briefed, and the parties submitted evidentiary submissions. (Docs. # 9, 10, 12 – 15). After careful review, the court concludes that the Motion is due to be denied.

## I.     Relevant Undisputed Facts[1]

Plaintiff Scott B. Trammell ("Plaintiff") was employed with defendant Amdocs, Inc. ("Defendant") from March 2010 to February 2015. (Doc. # 9 at p. 1; Doc. # 13 at p. 1). He brings this action against Defendant asserting a claim for overtime pay under the Fair Labor Standards Act ("FLSA"). 29 U.S.C. § 207. In particular, he contends that Defendant failed to pay Plaintiff at the appropriate overtime rate for each hour worked in excess of forty hours during each workweek between August 2014 and January 2015. (Doc. # 1 at p. 4). Defendant denies that it violated the FLSA and asserts that Defendant was exempt from the overtime rule because he meets the highly-compensated employee provision of the FLSA. (Doc. # 9 at p. 4).

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at trial. *See Cox v. Admr. U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Defendant is a computer software company that provides billing and customer management services for communications service providers. (*Id*. at p. 1). It is undisputed that (1) Defendant is an employer within the meaning of the FLSA and engaged in interstate commerce within the meaning of 29 U.S.C. § 207, (Doc. # 1 at p. 3), and (2) Plaintiff was at all times relevant to this case Defendant's employee within the meaning of the FLSA. (*Id*. at p. 2).

Plaintiff worked as a Project Management Office Professional ("PMO Professional")[2] from August 25, 2014 until he left Defendant's employment. (Doc. # 1 at p. 3; Doc. # 12 at p. 5). Defendant claims that Plaintiff's duties as a PMO Professional included generating reports for his supervisor, responding to e-mail correspondence, monitoring and coordinating team projects, providing end to end project management, managing team workload, providing overall delivery of multiple projects, and coordinating, tracking, and reporting IT releases. (Doc. # 9 at p. 2; Doc. # 1 at p. 3). The records submitted by Defendant reflect that the job duties of a PMO Professional include the duties listed above. (Doc. # 9-2 at p. 2). Plaintiff admits only that he generated reports for his supervisor and responded to e-mail correspondence. (Doc. # 13 at p. 2). In his Affidavit, he denies preforming the other functions. (Doc. # 14 at p. 4, ¶ 4) ("My position as 'PMO Professional' consisted almost exclusively of generating reports and responding to email correspondence.").

Plaintiff's work as a PMO Professional consisted entirely of non-manual office work. (*Id*.). As part of their summary judgment submission, Defendant submitted a printout of Plaintiff's LinkedIn profile as PMO Professional. That profile suggests that Plaintiff's duties included all of the above listed duties, and that he directly managed seven employees and two applications. (Doc. # 9-4 at p. 2-3). A copy of Plaintiff's resume, also submitted by Defendant,

---

[2] According to the submitted exhibits, a PMO Professional is required to have a Bachelor's Degree in Industrial Engineering or Economics. (Doc. # 9-2 at p. 2).

3

indicates that Plaintiff's primary duties were the coordination, tracking, and reporting of AT&T IT wide releases, and delivery of multiple project releases (to include three major releases per year as well as interim releases throughout the year). (*Id*. at p. 6).

Defendant also has submitted the affidavit of Tricia Reisinger, regional employee relations lead for Defendant, detailing Plaintiff's duties and responsibilities as a PMO Professional. (Doc. # 9-1 at p. 2). Additionally, Defendant attaches the PMO Professional role definition indicating the duties and responsibilities of, and requirements for, holding the PMO Professional position. (Doc. # 9-2 at p. 2). Plaintiff earned $4,251.84 semi-monthly. (Doc. # 9 at p. 2; Doc. # 13 at p. 2). Accordingly, Plaintiff earned more than $100,000.00 in salary in 2014 and would have done so again in 2015 had he continued his employment with Defendant. (*Id*.).

## II.     Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56(c) requires the non-moving party to go beyond the pleadings and – by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file – designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("*Anderson*"). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. For Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson v. Liberty Lobby, Inc.*, teaches, under Rule 56(c) a plaintiff may not simply rest on her allegations made in the complaint; instead, as the party bearing the burden of proof at trial, she must come forward with at least some evidence to support each element essential to her case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Southwest Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Sawyer*, 243 F. Supp. 2d at 1262 (internal quotations omitted) (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

**III.    Analysis**

The FLSA mandates that a covered employer may not employ an employee for longer than a forty-hour workweek unless that employee receives overtime compensation at a rate not less than one and one-half times the employee's regular rate. 29 U.S.C. § 207(a)(1). However, an employer may be exempt from the overtime rule if the employee is considered a highly-compensated employee. 29 C.F.R. § 541.601 (2016).[3] A FLSA plaintiff is classified as a highly-compensated employee if (1) he earns a total annual income of $100,000 and at least $455 per week, (2) customarily and regularly performs any one of the exempt duties or responsibilities of an executive, administrative or professional employee, and (3) primarily performs office or non-manual work. *Id*.

Here, Plaintiff and Defendant agree that Plaintiff earned more than $100,000 total annual income and that Plaintiff earned more than $455 per week. Further, it is undisputed that Plaintiff's duties consist primarily of office or non-manual work. Thus, the first and third prongs of the three-part exemption test are met as a matter of law. The parties disagree as to the second

---

[3] The FLSA regulations analyzed in this Opinion are current as of June 30, 2016, and with respect to 29 C.F.R. §§ 541.100 and 541.601 effective until December 1, 2016.

element—whether Plaintiff, while employed as a PMO Professional, performed any one of the exempt duties or responsibilities of an executive, administrative, or professional employee as listed in the FLSA.

An employee's job title is insufficient to determine whether an employer is exempt from FLSA requirements. 29 C.F.R. § 541.2 (2016). That is, regardless of job title, a plaintiff must have *actually* performed one of the exempt executive, administrative, or professional duties customarily and regularly. 29 C.F.R. § 541.601(a); *Ale v. Tenn. Valley Auth.*, 269 F.3d 680, 688-89 (6th Cir. 2001) ("[C]ourts must focus on the actual activities of the employee in order to determine whether or not he is exempt from the FLSA's overtime regulations."). "The phrase 'customarily and regularly' means a frequency that must be greater than occasional but which, of course, may be less than constant." 29 C.F.R. § 541.701 (2016). Specifically, it means "work normally and recurrently performed every workweek," but not "isolated or one-time tasks." *Id*.

In support of its Rule 56 Motion, Defendant has provided Plaintiff's resume and LinkedIn profile. However, as the Fifth and Sixth Circuits have both indicated, a resume (and similarly a LinkedIn profile) is not dispositive and should not be considered absent other supporting evidence. *See Allen v. Coil Tubing Servs., L.L.C.*, 755 F.3d 279, 305 (5th Cir. 2014); *Schaefer v. Ind. Mich. Power Co.*, 358 F.3d 394, 400-01 (6th Cir. 2004). Thus, the court must look at the summary judgment record and determine whether there is a genuine dispute of fact about whether Plaintiff performed exempt duties (i.e., executive, administrative, or professional duties) while working as a PMO Professional.

Defendant has come forward with evidence that Plaintiff was responsible for, among other things: "monitoring and coordinating team projects, providing end to end project management, managing team workload, providing overall delivery of multiple projects, and

coordinating, tacking, and reporting IT releases." (Doc. # 12 at p. 5, ¶ 5). Those job duties certainly seem like the type an IT employee making over $100,000 might perform. But, here is the problem. Plaintiff denies he performed those duties. He claims he only "generat[ed] reports and respond[ed] to e-mail correspondence." (Doc. # 14 at p. 4, ¶ 4). He denies monitoring and coordinating team projects (*id.* at ¶ 5); providing end to end project management (Doc. # 14 at p. 5, ¶ 6); managing team workloads (*id.* at ¶ 7); providing delivery of multiple projects (*id.* at ¶ 8); coordinating IT releases (*id.* at ¶ 9); managing any department of Defendant (*id.* at ¶ 10); directing the work of other employees (*id.* at ¶ 11); or performing other executive, administrative, or professional duties (*id.* at pp. 5-6, ¶¶ 12-16).

The court recognizes that Plaintiff's denials raise a number of questions. Perhaps chief among these inquiries is this: Would an employer really pay someone like him over $100,000 to merely answer emails and generate reports? (If so, where can recent college graduates in the IT field obtain an Amdocs application for employment?) It might even be said that his denial lacks credibility. But it emphatically is the trier of fact who must say that, not this court ruling on a motion for summary judgment.

### A. Whether Defendant Customarily and Regularly Performed Any Exempt Executive Duties.

The executive duties listed in the FLSA include management of a customarily recognized department or subdivision of the employing enterprise, the direct management of two or more employees, and control, or substantial influence, over the employment status of other employees. 29 C.F.R. § 541.100(2)-(4) (2016). Here, although Defendant has presented evidence that Plaintiff directly managed seven employees while employed as a PMO Professional, (Doc. # 9-4 at p. 3), Plaintiff has filed an affidavit which, under oath, denies that fact. At the Rule 56 stage, it is not for this court to assess the credibility of Plaintiff's denial. For this reason, the court

concludes that Defendant has not met the burden of establishing that Plaintiff customarily and regularly performed exempt executive duties or responsibilities.

> B. **Whether Defendant Customarily and Regularly Performed Any Exempt Administrative Duties.**

An employee "who leads a team of other employees assigned to complete major projects for the employer," engages in administrative duties under the applicable regulations. 29 C.F.R. § 541.203(c) (2016). Certain examples of these administrative duties are provided by the regulations: purchasing, selling, or closing all or part of the business, negotiating a real estate transaction or a collective bargaining agreement, or designing and implementing productivity improvements." *Id*. Further, an employee engages in administrative duties "even if the employee does not have direct supervisory responsibility over the other employees on the team." *Id*.

Tricia Reisinger's affidavit states that Plaintiff's duties and responsibilities included tasks such as monitoring and coordinating team projects as well as managing team workload. (Doc. # 9-1 at p. 3). Her descriptions are indicative of an employee "who leads a team of other employees assigned to complete major projects for the employer." 29 C.F.R. § 541.203(c). In addition to that affidavit, Defendant points to the PMO Professional role definition, which suggests someone holding that position would be called upon to perform those same duties and responsibilities. (*See* Doc. # 9-2 at p. 2).

Again, the problem here is that Plaintiff has denied that <u>he</u> engaged in those job duties. Indeed, Plaintiff has stated under oath that his duties consisted almost exclusively of generating reports and responding to email correspondence. For these reasons, the court cannot on this Rule 56 record conclude that Plaintiff customarily and regularly conducted sufficient administrative duties.

    **C.**    **Whether Plaintiff Customarily and Regularly Performed Any Exempt Professional Duties.**

The FLSA provides a three part test for determining whether an employee's position is that of an exempt professional: (1) the employee must perform work requiring advanced knowledge; (2) the advanced knowledge must be in a field of science or learning; and (3) the advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction. 29 C.F.R. § 541.301(a) (2016). When evaluating what the specific job requires, "the determinative factor is the job requirement and not the education in fact acquired by the employee." *Dybach v. Fla. Dep't of Corrs.*, 942 F.2d 1562, 1565 (11th Cir. 1991).

Regarding the first prong of this test, "work requiring advanced knowledge means work which is predominantly intellectual in character, and which includes work requiring the consistent exercise of discretion and judgment, as distinguished from performance of routine mental, manual, mechanical or physical work." 29 C.F.R. § 541.301(b) (internal quotations omitted). Again, in her affidavit, Tricia Reisinger states that Plaintiff performed these job duties in his role as a PMO Professional. But Plaintiff has specifically denied that assertion. This presents a disputed issue of fact for a jury to decide.

**IV.**    **Conclusion**

For all of these reasons, the court concludes that a question of material fact exists concerning whether Plaintiff is a highly-compensated employee pursuant to the relevant FLSA regulations. Defendant's Motion for Summary Judgment is due to be denied.

**DONE** and **ORDERED** this July 6, 2016.

                                                          **R. DAVID PROCTOR**
                                                          UNITED STATES DISTRICT JUDGE