FILED
2017 Jul-14  PM 02:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA, SOUTHERN DIVISION**

| | | |
|---|---|---|
| SCOTT B. TRAMMELL, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 2:15-cv-01473-RDP** |
| | ) | |
| AMDOCS, INC., | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT AMDOCS, INC.'S
RENEWED MOTION FOR SUMMARY JUDGMENT**

## I.      INTRODUCTION

Plaintiff Scott B. Trammell ("Plaintiff") has filed a single-count complaint against Defendant Amdocs, Inc. ("Amdocs"), asserting that he is entitled to overtime payments under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207.  Specifically, Plaintiff alleges that Amdocs failed to compensate him for overtime hours worked between August 2014 and the end of his Amdocs employment in February 2015.  His claims, however, are barred as a matter of law because he is exempt and ineligible from overtime as a highly-compensated employee.

At the outset of this case, and prior to the undertaking of discovery, Amdocs submitted a Motion for Summary Judgment explaining that Plaintiff fell within the highly-compensated employee exemption.  [Doc. No. 8].  Plaintiff responded to that motion, admitting, among other things, that during all relevant times while employed at Amdocs: 1) he made more than $100,000; 2) all of his Amdocs job duties involved non-manual office work; and 3) he was paid on a salaried basis, earning $4,251.84 on a semi-monthly basis.  [Doc. No. 13].

Also in that motion, Amdocs adduced evidence showing that Plaintiff customarily and regularly performed at least one of the exempt duties of an executive, administrative, or

professional employee.  [Doc. No. 12].  Plaintiff, opposing that motion, nakedly asserted that his job duties consisted only of "generating reports" and "responding to e-mail correspondence." [Doc. No. 13].

Although the Court denied Amdocs's early motion given the lack of discovery, it expressed its skepticism of Plaintiff's testimony ("Would an employer really pay someone like him over $100,000 to merely answer emails and generate reports?" and "It might even be said that his denial lacks credibility.").  As a result, the Court permitted the case to continue through discovery.  Discovery has now closed, and this motion is ripe for adjudication.

The discovery required as a result of Plaintiff's earlier blanket denials reveals that, at best, Plaintiff has no memory or knowledge of his employment,[1] and nonetheless establishes what Amdocs already explained: his duties and his salary squarely exempt him from eligibility for overtime and bar his claim.  In fact, Plaintiff does not and cannot dispute that Plaintiff customarily and regularly engaged in at least one of the exempt duties of an executive, administrative, or professional employee.  As shown below, summary judgment is appropriate because Plaintiff cannot credibly dispute that his duties involved at least one of the exempt duties of an executive, administrative, or professional employee.

## II.   STATEMENT OF UNDISPUTED MATERIAL FACTS

Amdocs incorporates by reference its Statement of Undisputed Material Facts from its first Motion for Summary Judgment.  For ease of reference and clarity, however, Amdocs submits the following Statement of Undisputed Material Facts, which may repeat some of those previously agreed to in the prior filings.  Amdocs makes reference to the Declaration of Tricia

---

[1] Despite Amdocs serving Plaintiff with substantial discovery requests and taking Plaintiff's deposition, Plaintiff never sought to depose a single person to establish his claims.  And, in Plaintiff's deposition, he repeatedly strained belief by insisting he could not remember his other duties at Amdocs.  Plaintiff's stonewalling at his deposition and feigned forgetfulness precludes any meaningful consideration of his naked denials in considering this motion.

Reisinger, and the Exhibits attached to that Declaration, previously submitted in support of its first Motion for Summary Judgment, and which again for ease of reference are attached hereto.

1.      Amdocs is a computer software company that provides, among other things, billing and customer management services for communications service providers, including AT&T.  (Declaration of Tricia Reisinger, ¶ 3, attached hereto as Exhibit A.)

2.      Plaintiff worked for Amdocs from March 2010 until February 2015 in a variety of senior information technology roles, and in his most recent position worked as a Project Management Office ("PMO") Professional.  (*Id.* at ¶ 4.)

3.      Plaintiff voluntarily ended his Amdocs employment in February 2015. (Plaintiff's Responses to Amdocs, Inc.'s First Requests for Admission, ¶¶ 1, 19, attached hereto as Exhibit B.)

4.      All of Plaintiff's job duties involved non-manual office work.  (*Id.*, ¶ 9.)

5.      Amdocs paid Plaintiff more than $100,000 in 2014, and on an annualized basis paid Plaintiff more than $100,000 in 2015.  (Exhibit A, ¶¶ 7-10 and Exhibit 2 thereto.)

6.      Plaintiff was paid on a salaried basis, earning $4,251.84 on a semi-monthly basis. Additionally, Plaintiff was eligible for, and received from Amdocs, certain awards and bonuses, although his base salary alone was more than $100,000.  (Exhibit A, ¶¶ 7-8.)

7.      Plaintiff's job duties between August 2014 and the end of his Amdocs employment entailed providing critical project monitoring for AT&T.  (Deposition of Scott B. Trammell, 65:22 – 66:18, attached hereto as Exhibit C; Declaration of Deb Richardson, ¶ 5, attached hereto as Exhibit D.)

8.      Plaintiff's job duties between August 2014 and the end of his Amdocs employment included data verification.  (Exhibit B, ¶ 12.)

9.      Plaintiff's job duties between August 2014 and the end of his Amdocs employment included producing slides and presentations to report the status of projects. (*Id.*, ¶ 13.)

10.      Plaintiff's job duties between August 2014 and the end of his Amdocs employment included advising Amdocs employees with regard to verifying information about project releases.  (Exhibit C, 96:20 – 99:2 and Exhibit 6 thereto (deposition exhibits filed under seal); Exhibit D, ¶¶ 8-10.)

11.      Plaintiff's job duties between August 2014 and the end of his Amdocs employment included creating and delivering presentations on the status of various projects. (Exhibit C, 51:6 – 51:18; 107:1 – 108:18 and Exhibit 19 thereto; Exhibit D, ¶¶ 13-14.)

12.      Plaintiff's job duties between August 2014 and the end of his Amdocs employment included reviewing and compiling data from multiple sources.  (Exhibit C, 53:2 – 54:13; 56:22 – 58:5 and Exhibit 7 thereto; 64:1 – 65:2 and Exhibit 9 thereto; Exhibit D, ¶¶ 9, 11.)

13.      Plaintiff's job duties between August 2014 and the end of his Amdocs employment included reviewing and ensuring the accuracy of project reporting data.  (Exhibit C, 54:6 – 54:13; 79:18 – 80:12 and Exhibit 12 thereto; 94:16 – 96:1 and Exhibit 15 thereto; Exhibit D, ¶¶ 8-9.)

14.      Plaintiff's job duties between August 2014 and the end of his Amdocs employment included mining data and generating weekly reports of that data.  (Exhibit C, 64:1 – 64:11; 85:9 – 86:23; Exhibit D, ¶ 10.)

15.      Plaintiff's job duties between August 2014 and the end of his Amdocs employment included entering and verifying data in a dashboard and monitoring project status of pending projects through that dashboard.  (Exhibit C, 65:22 – 66:18; Exhibit D, ¶ 11.)

16.     Plaintiff's job duties between August 2014 and the end of his Amdocs employment included coordinating data from certain managers to verify project progression. (Exhibit C, 69:12 – 70:23 and Exhibit 10 thereto; Exhibit D, ¶¶ 11-12.)

17.     Plaintiff's job duties between August 2014 and the end of his Amdocs employment included continuously gathering information and assessing the risk of missing deadlines or major milestones.  (Exhibit D, ¶ 12.)

18.     Plaintiff's job duties between August 2014 and the end of his Amdocs employment included meeting with and directly interfacing with AT&T with respect to upcoming releases, and on at least one occasion he prepared and presented a report to AT&T. (*Id.*, ¶ 14.)

19.     Plaintiff's job duties between August 2014 and the end of his Amdocs employment included writing training materials to teach development teams how to log into and use a Sharepoint tool to update team status information, and ensuring that the development teams corrected issues in a timely fashion.  (*Id.*, ¶ 15.)

20.     Plaintiff does not recall that his job duties between August 2014 and the end of his Amdocs employment included monitoring and coordinating team projects related to AT&T IT releases.  (Exhibit C, 61:15 – 63:16 and Exhibit 8 thereto.)

### III.     LEGAL STANDARD

Summary judgment is appropriate where, as here, the facts and inferences in the light most favorable to the nonmovant demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether,

in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Summary judgment is "an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990) (internal citations omitted).

Moreover, summary judgment is appropriate where the non-moving party's evidence is "merely colorable or is not significantly probative."  *Sawyer v. Southwest Airlines Co.*, F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).  The plaintiff may not rest upon conclusory allegations and subjective beliefs in opposing summary judgment, but instead must present significant probative evidence.  *Williams v. Bedsole*, No. 2:09-CV-375-TMH, 2012 WL 4711856 at *4 (M.D. Ala. Sept. 6, 2012) (citing *Anderson*, 477 U.S. at 249).

As demonstrated below, there is no genuine issue of material fact warranting a trial. Plaintiff's single count claim for overtime under the FLSA is barred because he squarely falls within the highly-compensated employee exemption and is, therefore, ineligible for the overtime compensation he seeks.

## IV.   ARGUMENT

Amdocs is a provider of software and services to some of the world's most successful communications and media companies, including AT&T, among others.   (Exhibit D, ¶ 7.) Amdocs provides IT products and solutions for these companies, many of which involve teams of employees working together to design, enhance, and upgrade systems that are on critical deadlines for release.  (*Id.*, ¶ 6.)  Missing these deadlines would cause significant damage to Amdocs's relationship with its customers, and would damage Amdocs's reputation as a global

leader in the development of these technologies. (*Id.*, ¶ 7.) Plaintiff, as a PMO Professional, was responsible for ensuring that these teams were on track to release AT&T IT projects in a timely fashion. (*Id.*, ¶ 16.) He provided immense oversight to the status of projects, verified whether data was accurate, and updated teams of project managers and others to ensure releases were not missed. (*Id.*, ¶¶ 8, 11-12.) These functions were both administrative in nature (as shown in greater detail below) and critical to Amdocs's business. (*Id.*, ¶¶ 16-17.) Plaintiff's role as a PMO Professional at Amdocs involved substantial key administrative functions to ensure projects were tracked and delivered to AT&T on time. (*See*, *generally*, Declaration of Deb Richardson attached hereto as Exhibit D).

**A.    The Highly-Compensated Employee Exemption Applies to Plaintiff's Claims.**

The FLSA provides certain overtime protections for non-exempt employees, including a requirement that such employees be compensated at "not less than one and one-half times the regular rate at which" the employee is employed. 29 U.S.C. § 207(a)(1). These overtime protections, however, do not apply to all employees. Where, as here, Plaintiff earned more than $100,000 annually, the inquiry as to whether he is exempt is "simplified considerably." *Hicks v. Mercedes-Benz U.S. Intern., Inc.*, No. 7:08-cv-0536-LSC, 2012 WL 1566140 at *2 (N.D. Ala. Apr. 20, 2012). Specifically, under the FLSA, an employee "with total annual compensation of at least $100,000 is deemed exempt under section 13(a)(1) of the Act if the employee customarily and regularly performs *any one or more* of the exempt duties or responsibilities of an executive, administrative, or professional employee . . . ." 29 C.F.R. § 541.601(a) (emphasis supplied). The employee must also earn a salary of at least $455 per week and the primary duty must include performing office or non-manual work. 29 C.F.R. § 541.601(b) and (d). Notably,

the regulations do not require that a highly-compensated employee exercise discretion and independent judgment. *Id.* This Court has clearly articulated the analytical framework:

> Accordingly, there are essentially two steps to determining whether summary judgment should be granted for [Amdocs] under the highly compensated exemption. First, the Court must ascertain whether there is a genuine issue of material fact as to the level of compensation, and whether it totals at least $100,000 for [Plaintiff] for each of the years in question. If the $100,000 threshold is reached, the second step is to determine whether the primary duties of [Plaintiff] included some office or non-manual work, with one or more exempt duties 'customarily and regularly' performed.

*Hicks*, 2012 WL 1566140 at *3.

**B.    Plaintiff Was Paid the Required Compensation to Be Exempt as a Highly Compensated Employee.**

As to the first step of the inquiry, Plaintiff readily admits Amdocs paid him above the salary threshold required for the highly-compensated employee exemption. Plaintiff admits that: 1) during the relevant time period, Plaintiff earned more than $100,000 annually; 2) Plaintiff was paid on a salary basis of at least $455 per week; and 3) all of Plaintiff's duties involved performing office or non-manual work. (Exhibit B, ¶¶ 6-9.)

**C.    Plaintiff Customarily and Regularly Performed One or More Exempt Duties.**

The only issue, therefore, for this Court's consideration, is whether Plaintiff "customarily and regularly performed any exempt duty of an executive, administrative, or professional employee." 29 C.F.R. § 541.601(d). "Customarily and regularly" is defined as "a frequency that must be greater than occasional but which, of course, may be less than constant." 29 C.F.R. § 541.701. It includes "work normally and recurrently performed every workweek," but not "isolated or one-time tasks." *Id.*

The plain language of the regulations clearly state that, because a high salary is an indication of exempt status, a detailed inquiry into the employee's job duties is <u>not</u> required.

> A high level of compensation is a strong indicator of an employee's exempt status, thus eliminating the need for a detailed analysis of the employee's job duties. … An employee may qualify as a highly compensated executive employee, for example, if the employee customarily and regularly directs the work of two or more other employees, even though the employee does not meet all of the other requirements for the executive exemption under § 541.100.

29 C.F.R. § 541.601(c).

Notably, the regulation is clear that an employee need not exercise independent judgment and discretion to qualify for the highly-compensated employee exemption. *Id.* The few courts to address this point consistently agree. *See Coppage v. Bradshaw*, 665 F. Supp. 2d 1361, 1369 (N.D. Ga. 2009) ("the applicable regulation does not require a highly compensated employee to exercise discretion."); *Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459, 478 (S.D.N.Y. 2008) ("Among other things, this exemption removes any requirement that an employer prove that an administrative employee exercised discretion in the performance of her duties."). Thus, Plaintiff cannot rely upon his assertion that he did not exercise independent judgment and discretion; it is irrelevant to the highly-compensated employee exemption. "The employee need not meet all of the requirements of executive, administrative, or professional employees." *Zannikos v. Oil Inspections (U.S.A.), Inc.*, 605 Fed. Appx. 349, 359 (5th Cir. 2015) (holding that although the plaintiff did not fall under the administrative exemption because he did not exercise independent judgment or discretion, he still was exempt under the highly-compensated employee exemption). *Id.*

1. **Evidence adduced in discovery confirms Plaintiff regularly performed administrative duties.**

The additional evidence gathered in the course of discovery confirms Amdocs's previous position: there is no question that Plaintiff did in fact customarily and regularly perform duties contained in the administrative exemption.  Although it is true that Plaintiff sent e-mails and generated reports (like every single office worker in America), he admits that he customarily and regularly performed multiple exempt-level tasks in conjunction with and beyond sending e-mails and generating reports.  These tasks included job duties that are crucial to Amdocs's business operations, particularly with respect to its projects for AT&T.  (Exhibit D, ¶¶ 17.)

For example, Plaintiff admits he was responsible for ensuring that projects moved along as planned so that releases were not delayed.  (Exhibit C, 69:12 – 70:23, Exhibit D, ¶ 11.)  These releases are critical to Amdocs's business and customer retention.  (Exhibit D, ¶ 16.)  Missing release dates for IT projects would create costly delays and ultimately could cause Amdocs to lose its customers.  (*Id.*, ¶ 7.)  Plaintiff also admits that he customarily and regularly performed the following additional duties:

- data verification for project releases (Exhibit B, ¶ 12);

- creating slides and producing presentations (*Id.*, ¶ 13);

- advising employees on project release needs (Exhibit C, 96:20 – 99:2);

- monitoring the status of critical projects for AT&T (*Id.*, 65:22 – 66:18);

- reviewing and compiling data from multiple sources (*Id.*, 53:2 – 54:13; 56:22 – 58:5; 64:1 – 65:2);

- generating weekly reports of project status based upon information provided by project managers (*Id.*, 64:1 – 64:11; 85:9 – 86:23); and

- coordinating with managers to verify project status (*Id.*, 69:12 – 70:23).

Similar duties have been held to qualify as administrative duties.  *See*, *e.g.*, *Zalewski v. PNC Fin. Servs. Grp., Inc.*, No. CIV.A. 06-1231, 2008 WL 9390891, at *2-3 (W.D. Pa. Feb. 4, 2008) (compiling reports and verifying financial reports and data were administrative duties); *Morgan v. Zieger Health Care Corp.*, No. 13-14809, 2015 WL 4040465, at *12 (E.D. Mich. June 5, 2015) (maintaining database and providing calculations/counseling constituted administrative duties); *Lane v. Sys. Application & Techs., Inc.*, No. DKC 13-3566, 2015 WL 1013449, at *8 (D. Md. Mar. 6, 2015) (preparing and submitting reports and drafting and preparing documents for review and approval were administrative duties).  As a result, Plaintiff has admitted that he engaged in a multitude of duties which the courts have found constitute administrative tasks for the purposes of exemption from the FLSA overtime regulations.

### 2.    Plaintiff's generic denials should not be given any weight.

Amdocs anticipates that Plaintiff will likely again oppose this motion by claiming merely that he did nothing but send e-mails and generate reports.  Now that discovery has closed, this type of generic testimony should be rejected.  *First*, sending e-mails and generating reports are nothing but vehicles to communicate responsibilities being performed.  To rely on the fact that he sends e-mails all day is akin to Your Honor claiming he is not exempt because he reads for most of the day, or the undersigned is not exempt because she types all day.

*Second,* now that Plaintiff has been deposed, his generic prior testimony has no weight. During his deposition, Plaintiff doggedly insisted that, actually, *he does not remember* what he was doing, even in the face of multiple exhibits demonstrating his duties and the very sophisticated level of his work.  Remarkably, Plaintiff *did not deny* that he actually performed such duties; rather, he cited a lack of memory as to what he did or why he did it.  For instance,

the following exchange is just one of many emblematic examples of Plaintiff's refusal to provide

any recollection of his job duties:

Q.     Okay.  Did you prepare the list of SNET projects that is contained in the
       bottom of this email?
**A.     I don't recall whether I did or not.**
Q.     Do you know where you got this information to include it in your e-mail?
**A.     I'm not sure where the data came from.**
Q.     Do you know whether that information was being furnished to anyone else
       at Amdocs other than you?
**A.     Whether this data was being furnished to anyone other than me?**
Q.     The data – the answers that you asked, expectations, target timeline, target
       kickoff and completion date, whether anyone else was compiling this
       information other than you for these applications?
**A.     I don't know whether anybody else was compiling the data.**
Q.     Why were you asking that information that's contained in the e-mail in
       Exhibit 8?  What was the purpose of your inquiry?
**A.     I'm not sure.  It doesn't say why I was asking it, but I don't see a
       reason why I was asking it.  I don't recall why I was asking it.**
Q.     Now do you recall whether you got information in response to your
       inquiry?
**A.     Looks like Michael Clarke replied.**
Q.     And Michael Clarke is a project manager?
**A.     Yes.  Looks like he is.**
Q.     Okay.  And so he gives you some initial information on January 8th and
       then gives you additional updated information on January 14th, correct?
**A.     Yes.**
Q.     And do you know whether anybody other than you was the recipient of
       this kind of data that Michael Clarke was furnishing you?
**A.     I don't know if anybody else was receiving that data.**
Q.     Now these projects that are listed in Exhibit 8, are these team projects that
       you were coordinating?

       […]

**A.     I don't recall.  I don't know if I was coordinating.  I don't think I was
       coordinating anything here.  I was just asking for data.**
Q.     What was the purpose of you asking for the data?
**A.     That, I don't know.  I don't have a reason here.**
Q.     Were you monitoring the status of it?

       […]

**A.     I mean, I'm asking questions, specific questions, about projects.  I
       don't –**

> Q.     You can't remember why you were doing it?
> **A.     I can't remember why I was doing it.  Could have been something that Deb asked for.**
> Q.     Okay.  Do you have any reason to dispute that it was for monitoring and coordinating?
> **A.     I have – I don't know what the need was for.  I don't have any idea what the need was for.**

Exhibit C, 60:1-62:12.[2]

Plaintiff's statements, then, belie any affidavit claiming that he did nothing but send e-mails and generate reports.  And, in fact, this Court can fairly weigh the specific testimony and memory from his former direct supervisor, Deb Richardson.  Unlike Plaintiff, Ms. Richardson has specific memory of Plaintiff's duties and responsibilities, which squarely establish that he customarily and regularly performed administrative duties as a PMO Professional.

Plaintiff is not the first litigant who has attempted to avoid summary judgment by tendering generic denials and feigning memory loss.  These types of evasive answers have been squarely rejected as a possible method of avoiding summary judgment.  Judge Coogler, for example, faced very similar evasive testimony in analyzing a similar motion for summary judgment in *Hicks*, supra.  He found that, even where a plaintiff would refuse to openly admit the obvious nature of their duties, or evaded questions, such tactics were inappropriate to avoid summary judgment.  In summarily dismissing the claims of all 16 plaintiffs, the Court considered the compendium of evidence and noted that "[t]he very purpose of the highly compensated employee exemption is to 'eliminat[e] the need for a detailed analysis of the employee's job duties,' so any further inquiry is unnecessary."  *Hicks*, 2012 WL 1566140 at *7.

---

[2] The above passage is merely one example of Plaintiff's obfuscation as to his Amdocs duties at his deposition.  The deposition transcript is replete with passages like the one presented above.  One must wonder how Plaintiff can be so unsure of what he did when asked directly about those duties, even when presented with exhibits reflecting what he was doing, and yet so certain by way of affidavit that he did nothing but send e-mails and generate reports.

In fact, the only probative evidence as to Plaintiff's job duties at Amdocs overwhelmingly demonstrates that he regularly performed one or more of the duties of an administrative employee. Based on the above, summary judgment is appropriate: Plaintiff was paid on a salary basis, he made more than $100,000 annually, with wages of at least $455 per week, all of his duties involved non-manual office work, and he regularly performed at least one duty of an executive, administrative, or professional employee. Nothing more is required for exemption under the highly-compensated employee exemption.

**D. Alternatively, Plaintiff's Claims Are Barred Because He Is Exempt Under the Administrative Exemption.**

Although the above unequivocally demonstrates that Plaintiff is exempt as a highly-compensated employee, his claims are also barred because he is exempt under the administrative employee exemption. An employee is exempt as an administrative employee if: 1) the employee is paid on a salary or fee basis; 2) the primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and 3) the primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200(a).

Amdocs has already shown, and Plaintiff has admitted, that Plaintiff was paid on a salary basis and that all of his duties involved office or non-manual work. Moreover, as described above, Plaintiff's duties were of substantial importance and were directly related to servicing Amdocs's largest client, AT&T. Notably, his duties squarely involved ensuring that AT&T's IT projects were developed and released in a timely fashion. Plaintiff was in charge of teams to ensure completion of major projects on behalf of AT&T. *See* 29 C.F.R. § 541.203 ("An employee who leads a team of other employees assigned to complete major projects for the employer … generally meets the duties requirements for the administrative exemption, even if

the employee does not have direct supervisory responsibility over the other employees on the team."). Plaintiff duties thus fall squarely within the administrative duties test.

The highly-compensated employee exemption does not require a showing of discretion or independent judgment, but Plaintiff also exercised such discretion in updating timelines, manipulating data, and otherwise providing guidance and task requirements for project releases. (Exhibit D, ¶¶ 6, 8.)  There can be no question of the significance of these tasks given the importance of the AT&T releases.  (Exhibit D, ¶ 7.)  Further, Plaintiff was responsible for carrying out major assignments for AT&T and those assignments affected AT&T's business operations.  *See id.* at § 541.202.  Plaintiff made recommendations and provided updates to project managers to ensure projects were on schedule.  (Exhibit D, ¶¶ 10-11.)  Notably, under the regulations, "[t]he fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment."  *Id.* at § 541.202(c).  Plaintiff's role as a PMO Professional, under these regulations, required discretion and independent judgment in the performance of his duties.

## V.   CONCLUSION

WHEREFORE, for all of the foregoing reasons, Amdocs respectfully requests that the Court grant Amdocs's Renewed Motion for Summary Judgment, and for any further relief the Court deems proper.

Respectfully submitted,


THOMPSON COBURN LLP


By  /s/ Laura M. Jordan
    Laura M. Jordan, Esq. (*pro hac vice*)
    Paul R. Klein, Esq. (*pro hac vice*)
    One US Bank Plaza
    St. Louis, Missouri  63101
    314-552-6000
    FAX 314-552-7000
    ljordan@thompsoncoburn.com
    pklein@thompsoncoburn.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of July, 2017, I electronically filed the foregoing with the Court using the CM/ECF system, which will send notification of such filing, via electronic mail, to all attorneys of record.


  /s/ Laura M. Jordan

- 16 -