FILED
2018 Feb-21 PM 05:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SCOTT B. TRAMMELL, } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.: 2:15-cv-01473-RDP |
| } | |
| AMDOCS, INC., } | |
| } | |
| Defendant. } | |

**MEMORANDUM OPINION**

This case is before the court on the Renewed Motion for Summary Judgment filed by Defendant Amdocs, Inc. ("Defendant" or "Amdocs"). (Doc. # 33). The Motion is fully briefed, and the parties filed evidentiary submissions. (Docs. # 33, 34, 35, 37, 40, 43). After careful review, the court concludes that the Motion is due to be granted.

**I.   Relevant Undisputed Facts[1]**

Plaintiff Scott B. Trammell ("Plaintiff" or "Trammell") was employed by Amdocs, a computer software company that provides billing and customer management services for communications service providers, from March 2010 to February 2015. (Docs. # 34 at p. 3; 40 at p. 2). He brings this action against Defendant asserting a claim for overtime pay under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207.[2] (Doc. # 1). In particular, he contends

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at trial. *See Cox v. Admr. U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

[2] It is undisputed that (1) Defendant is an employer within the meaning of the FLSA and engaged in interstate commerce within the meaning of 29 U.S.C. § 207 and (2) Plaintiff was, at all times relevant to this case, Defendant's employee within the meaning of the FLSA. (Docs. # 1 at p. 2-3; 20 at p. 2).

that Defendant failed to pay him at the appropriate overtime rate for each hour worked in excess of forty hours during each workweek between August 2014 and January 2015. (*Id.* at p. 4). Defendant denies that it violated the FLSA and asserts that Defendant was exempt from the overtime rule because he meets the highly-compensated employee provision of the FLSA. (Doc. # 34 at p. 1). Alternatively, Defendant asserts that Plaintiff is exempt under the administrative exemption to the FLSA. (*Id.* at p. 1-2).

Plaintiff worked as a Project Management Office Professional ("PMO Professional")[3] from August 25, 2014 until he left Defendant's employment. (Docs. # 1 at p. 3; 34 at p. 3). He earned $4,251.84 on a semi-monthly basis. (Docs. # 34 at p. 3; 40 at p. 2). Plaintiff's base salary was over $100,000, and he also was eligible for and received certain awards and bonuses in addition to his base salary. (*Id.*).

The PMO Professional role definition document, which was submitted by Defendant, reflects that the job duties and responsibilities of a PMO Professional include building and tracking holistic project plans, ensuring that projects are correctly planned and that work is executed to meet planned deliverables, providing an integrative view and analysis of various project aspects within the program to enable better decision making, ensuring that information is gathered and disseminated to all stakeholders and management, overseeing end-to-end project outcomes, tracking and highlighting risks and trends, raising concerns of possible project deviations, performing project audits and reviews, preparing risk management reports, and developing appropriate contingency plans, among other responsibilities. (Doc. # 35-1 at p. 5). However, Plaintiff denies that he performed the duties and responsibilities of a PMO during his last position with Defendant. (Doc. # 40 at p. 2). The parties are in agreement that Plaintiff's

---

[3] According to the submitted exhibits, a PMO Professional is required to have a Bachelor's Degree in Industrial Engineering or Economics. (Doc. # 35-1 at p. 5).

job duties as a PMO Professional consisted entirely of non-manual office work and included the following tasks: data verification, producing slides and presentations to report the status of projects, verifying information about project releases, creating (at least) pieces of presentations on the status of various projects, reviewing and compiling data from multiple sources, reviewing and ensuring the accuracy of project reporting data, mining data and generating weekly reports of that data, entering and verifying data in a dashboard, combining multiple data sources into a single report, meeting with and directly interfacing with AT&T with respect to upcoming releases, preparing and presenting a report to AT&T on at least one occasion, and providing instructions and guidance to Defendant's employees regarding entering and verifying information about project releases. (Docs. # 34 at p.3-5; 40 at p. 2-4). In his Affidavit, Plaintiff states that his "position as a 'PMO Professional' consisted almost exclusively of generating reports and responding to email correspondence." (Doc. # 40-1 at p. 2).

## II.    Procedural History

On August 26, 2015, Plaintiff filed his complaint against Defendant in federal court. (Doc. # 1). Defendant filed a Motion for Summary Judgment, which asserted that Plaintiff was an exempt employee under the FLSA's highly-compensated employee exemption, on October 19, 2015. (Doc. # 8). In support of its Motion for Summary Judgment, Defendant included a printout of Plaintiff's LinkedIn profile, which suggested that Plaintiff managed seven employees and two applications and that Plaintiff's duties as a PMO Professional included those listed on the PMO Professional role definition (Doc. # 35-1 at p. 5). (Doc. # 9-4 at p. 2-3).

On July 6, 2016, the court denied Defendant's Motion for Summary Judgment (Doc. # 8) because Plaintiff's sworn denial that he did not engage in certain job duties created a question of material fact concerning whether Plaintiff was a highly-compensated employee. (Docs. # 18;

19). In the Memorandum Opinion, the court noted that "timing is everything." (Doc. # 18 at p. 1-2). Defendants' Renewed Motion for Summary Judgment (Doc. # 33), which is currently before the court, presents additional evidence that Plaintiff was an exempt employee under the FLSA and also demonstrates that Defendant needed additional time to prove -- as a matter of law -- that Plaintiff was an exempt employee under the FLSA. (Docs. # 34, 35).

### III. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56 requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is

merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson* teaches, under Rule 56(c) a plaintiff may not simply rest on his allegations made in the complaint; instead, as the party bearing the burden of proof at trial, he must come forward with at least some evidence to support each element essential to his case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999)

("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

IV. Analysis

The FLSA mandates that a covered employer may not employ an employee for longer than a forty-hour workweek unless that employee receives overtime compensation at a rate not less than one and one-half times the employee's regular rate. *See* 29 U.S.C. § 207(a)(1). However, § 13(a)(1) of the FLSA provides an exemption to these requirements for "any employee employed in a bona fide executive, administrative, or professional capacity."[4] Among other factors, a court examines the primary duties of an employer in order to determine whether that employee qualifies as a bona fide executive, administrative, or professional. *See* 29 C.F.R. §§ 541.100, 541.200, 541.300.

Defendant argues that Plaintiff qualified as an administrative employee while employed as a PMO Professional at Amdocs. An employee is exempt as an administrative employee if (1) the employee is paid on a salary or fee basis at a rate of not less than $455 per week, (2) his primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers, and (3) his primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200(a). "An employee who leads a team of other employees assigned to complete major projects for the employer . . . generally meets the duties requirements for the administrative exemption, even if the employee does not have direct

---

[4] The court notes that some definitions of exemptions for executive, administrative, and professional employees under the FLSA (including 29 C.F.R. §§ 541.200 and 541.601) were amended after Plaintiff left as an employee of Amdocs and filed his claim against Amdocs. *See* 81 Fed. Reg. 32391-01 (May 23, 2016). These amended regulations were not effective until December 1, 2016 and are not relevant to Plaintiff's claims. Accordingly, the court refers to the versions of these regulations that were effective when Plaintiff's claim accrued and was filed.

supervisory responsibility over the other employees on the team." 29 C.F.R. § 541.203(c). Furthermore, "employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level." 29 C.F.R. § 541.202(c).

Analysis of whether an employee qualifies as an administrative employee requires a fact-intensive inquiry of the employee's primary duties; however, if an employee is considered a highly-compensated employee under 29 C.F.R. § 541.601, the inquiry into the duties of the employee "is simplified considerably." *Hicks v. Mercedes-Benz U.S. Int'l, Inc.*, No. 7:08-cv-00536-LSC, 2012 WL 1566140, at *2 (N.D. Ala. Apr. 30, 2012). An FLSA plaintiff is classified as a highly-compensated employee if (1) he earns a total annual income of $100,000 and at least $455 per week, (2) customarily and regularly performs *any one* of the exempt duties or responsibilities of an executive, administrative, or professional employee, and (3) primarily performs office or non-manual work. 29 C.F.R. § 541.601. Because "[a] high level of compensation is a strong indicator of an employee's exempt status, . . . the need for a detailed analysis of the employee's job duties [is eliminated]." 29 C.F.R. § 541.601(c).

In addition to arguing that Plaintiff was an exempt employee under the administrative employee exception under 29 C.F.R. § 541.200, Defendant also contends that Plaintiff was an exempt employee under the more simplified highly-compensated employee exception in 29 C.F.R. § 541.601. Plaintiff and Defendant agree that Plaintiff earned more than $100,000 total annual income (and, thus, much more than $455 per week) and that Plaintiff's duties consisted of office or non-manual work. (Docs. # 34 at p. 8; 35-1 at p. 7; 40 at p. 2). Therefore, it is undisputed that the first and third prongs of the highly-compensated employee exemption test are met. However, the parties disagree as to the second element[5] -- whether Plaintiff, while

---

[5] The court notes that Plaintiff incorrectly states that, to meet the second element of highly-compensated employee exemption, Defendant must prove that Plaintiff's "primary duties" meet the administrative exemption

7

employed as a PMO Professional, "customarily and regularly" performed any of the exempt duties or responsibilities of an administrative employee as listed in the FLSA.

An employee's job title is insufficient to determine whether an employer is exempt from FLSA requirements. 29 C.F.R. § 541.2. That is, regardless of job title, a plaintiff must have *actually* performed one or more of the exempt duties customarily and regularly. 29 C.F.R. § 541.601(a); *Ale v. Tenn. Valley Auth.*, 269 F.3d 680, 688-89 (6th Cir. 2001) ("[C]ourts must focus on the actual activities of the employee in order to determine whether or not he is exempt from the FLSA's overtime regulations."). "The phrase 'customarily and regularly' means a frequency that must be greater than occasional but which, of course, may be less than constant." 29 C.F.R. § 541.701. Specifically, it means "work normally and recurrently performed every workweek," but not "isolated or one-time tasks." *Id*.

Here, the evidence "is so one-sided" that a reasonable jury could not find that Plaintiff does not meet the second element of the highly-compensated employee exemption test. *See Sawyer*, 243 F. Supp. 2d at 1262. Plaintiff has admitted that he performed the following duties as a PMO Professional at Amdocs:

- Data verification and verifying information about project releases (Docs. # 35-2 at ¶ 12; 40 at p. 2, 15);

- Producing slides and presentations to report the status of projects (Docs. # 35-2 at ¶ 13; 40 at p. 2-3, 15);

- Reviewing and compiling data from multiple sources into a single report (Docs. # 35-3 at p. 14; 40 at p. 3-4);

---

under § 541.200. (Doc. # 40 at p. 9-11). Such a circular analysis would make "the highly compensated exemption . . . meaningless" and ignores the text of § 541.601(c). *Hicks*, WL 1566140, at *2. As explained in *Hicks*, by collapsing the highly-compensated employee exemption with the administrative employee exemption, Plaintiff "overlook[s] the significance of the word 'includes' in [§ 541.601](d)." *Id.* Furthermore, "[t]here is a vast difference between fully determining an employee's 'primary duty' as part of the [administrative]-exemption analysis and simply determining whether that primary duty 'includes performing office or non-manual work.'" *Id.*

8

- Mining data and generating weekly reports of that data (Docs. # 35-3 at p. 16, 22; 40 at p. 3);

- Updating a project management dashboard that listed all AT&T projects ("dashboard") and generating dashboard reports on a weekly basis (Docs. # 35-2 at ¶ 15; 35-3 at p. 16, 17, 21; 40 at p. 15);

- Entering, reviewing, and verifying the accuracy of project report data (Doc. # 40 at p. 3);

- Maintaining and adding additional group data to dashboard reports regarding Amdocs projects (Doc. # 35-2 at ¶ 24-25);

- Looking at a project report and adding defects to it and who would manage the project (Docs. # 35-3 at p. 18; 40 at p. 4);

- Providing instructions and guidance to Amdocs employees regarding entering and verifying information about project releases (Docs. # 35-2 at ¶ 17; 40 at p. 4, 15);

- Meeting with and directly interfacing with AT&T with respect to upcoming releases (Doc. # 40 at p. 4);

- Preparing and presenting a report to AT&T at least once (Doc. # 40 at p. 4); and

- Ensuring that data was correct before sending it to AT&T (Doc. # 35-3 at p. 25).

These duties -- and, to be sure, Plaintiff admits to performing them -- reflect that Plaintiff completed "work directly related to the management or general business operations" of Amdocs's largest customer AT&T.[6] 29 C.F.R. § 541.200(a)(2). Ultimately, Plaintiff's admissions alone verify that Plaintiff "customarily and regularly" performed *at least* one exempt duty or responsibility under the FLSA.[7] *See* 29 C.F.R. § 541.601(a); *cf. Cruz v. Lawson*

---

[6] Defendant has certified that AT&T is Amdocs' largest customer and that Plaintiff worked on AT&T-related projects. (Doc. # 35-4 at ¶ 5-7). Plaintiff does not dispute that his duties involved "projects that Amdocs worked on for AT&T." (Doc. # 35-3 at p. 28).

[7] Plaintiff argues that he cannot qualify as a highly-compensated employee because his duties did not include the exercise of discretion and independent judgment. (Doc. # 40 at p. 10). "However, the applicable regulation does not require a highly compensated employee to exercise discretion." *Coppage v. Bradshaw*, 665 F. Supp. 2d 1361, 1369 (N.D. Ga. 2009). "To the contrary, 29 C.F.R. § 541.601(c) makes clear that a highly compensated employee need not satisfy each requirement stated in the administrative and executive employee exemptions." *Id.*; *see Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459, 478 (S.D.N.Y. 2008) ("Among other things, this exemption removes any requirement that an employer prove that an administrative employee exercised discretion in the performance of her duties.").

*Software, Inc.*, 764 F. Supp. 2d 1050, 1066 (D. Minn. 2011) (holding that employees whose work was aimed at the overall efficiency or mode of operation of the employer's customers performed work that directly related to the employer's management or general business operations); *Morgan v. Zieger Health Care Corp.*, No. 13-14809, 2015 WL 4040465, at *12 (E.D. Mich. June 5, 2015) (finding that maintaining a database and handling written inquires and requests constituted administrative duties).

In addition to the exempt duties that Plaintiff has admitted to performing, Defendant has provided the court with further undisputed evidence that Plaintiff customarily and regularly performed exempt duties while employed as a PMO Profession at Amdocs. In her affidavit, Tricia Reisinger ("Reisinger"), a Regional Employee Relations Lead of Amdocs, explains that Plaintiff "was responsible for, among others: monitoring and coordinating team projects, providing end to end project management, managing team workload, providing overall delivery of multiple projects, and coordinating, tracking, and reporting IT releases." (Doc. # 35-1 at ¶ 5). Reisinger's descriptions are indicative of an employee "who leads a team of other employees assigned to complete major projects for the employer." 29 C.F.R. § 541.203(c). Furthermore, Amdocs' verified PMO Professional role description (although not proof of the duties Plaintiff *actually* performed) strongly suggests someone holding that position would be called upon to perform administrative duties and responsibilities. (*See* Doc. # 35-1 at p. 5).

The affidavit of Deb Richardson ("Richardson"), who was Plaintiff's direct supervisor, further emphasizes Plaintiff's administrative role at Amdocs and fills the gaps where Plaintiff could not remember[8] the extent of his duties and responsibilities as a PMO Professional (Doc. # 35-4 at p. 15-16, 21, 29). (*See* Doc. # 35-4). Richardson explained that Plaintiff's duties

---

[8] The court notes that "lack of memory is insufficient to create a genuine dispute of fact." *Larsen v. Citibank FSB*, 871 F.3d 1295, 1308 (11th Cir. 2017); *see Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 541 (5th Cir. 2015) ("Lack of memory by itself is insufficient to create a genuine dispute of fact.").

included providing critical IT project monitoring and coordination with Project Managers to ensure project releases were on schedule and appropriately prioritized. (Doc. # 35-4 at ¶ 5, 12). Plaintiff was responsible for "over 30 projects at any given time, of varying sizes, which were being performed by 50 or more Amdocs employees." (*Id.* at ¶ 8). Additionally, he had ongoing oversight responsibilities for major IT releases, continuously gathered information and assessed the risk of missing deadlines, served as the central point person for on-demand status information, and ensured that AT&T could have accurate project status information upon request. (*Id.* at ¶ 8, 12). Richardson's sworn affidavit makes it clear that Plaintiff "meets the duties requirements for the administrative exemption" as he oversaw "a team of other employees assigned to complete major projects for" Amdocs. *See* 29 C.F.R. § 541.203(c).

The admissions of Plaintiff, along with other substantial, undisputed evidence provided by Defendants, sufficiently demonstrate that Plaintiff, as a PMO Professional, would "customarily and regularly" perform at least one exempt duty. *See* 29 C.F.R. § 541.601; *see also Hicks*, 2012 WL 1566140, at *6 ("[T]he need to examine job duties is considerably relaxed for the highly compensated exemption; an employee need only perform one or more exempt duties customarily and regularly."). After examining the evidence and construing all reasonable doubts in favor of Plaintiff, the court finds that no genuine dispute of material facts exists; therefore, summary judgment is due to be granted based on the highly-compensated employee exemption under the FLSA.

## V. Conclusion

For all of these reasons, the court concludes that Defendant's Motion for Summary Judgment is due to be granted. An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this February 21, 2018.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE